```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

| | |
|---|---|
| VALERIE DENE JONES, | ) |
| | ) |
|          Plaintiff, | ) |
| | ) |
|       v. | )    1:17CV774 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social | ) |
| Security, | ) |
| | ) |
|          Defendant. | ) |

### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Valerie Dene Jones, brought this pro se action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 9 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 12, 13; see also Docket Entry 14 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

### I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI. (Tr. 93-100.) Upon denial of those applications initially (Tr. 28-38, 51-54) and on

reconsideration (Tr. 39-50, 60-62),[1] Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 63-64). Plaintiff, proceeding pro se, and a vocational expert ("VE") attended the hearing. (Tr. 900-17.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 582-94.) The Appeals Council granted Plaintiff's request for review, and remanded the case for further consideration of new evidence and a consultative examiner's opinion. (Tr. 595-99, 600.)

Plaintiff, her attorney, and a VE attended a second hearing before a different ALJ (Tr. 875-99), and that ALJ issued a decision finding Plaintiff not disabled under the Act (Tr. 13-27). The Appeals Council thereafter denied Plaintiff's request for review (Tr. 9-12, 872-74), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the [] Act through June 30, 2014.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since December 31, 2010, the alleged onset date.
>
> . . .
>
> 3. [Plaintiff] has the following severe impairments: [c]hronic back and neck strain; left knee pain; essential hypertension; obesity and anxiety.
>
> . . .

---

[1] Plaintiff's application for SSI, as well as the denials of that application at the initial and reconsideration levels of review, do not appear in the record.

2

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform light work . . . except [she] can stand/walk a total of six hours and sit a total of six hours in an 8-hour workday. [Plaintiff] can occasionally climb, balance, kneel, crouch and crouch [sic]. [Plaintiff] is further limited to simple routine tasks.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the [] Act, from December 31, 2010, through the date of this decision.

(Tr. 18-27 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence

4

allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's]

---

[2] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process,
(continued...)

**B. Assignments of Error**

According to Plaintiff, the Court should overturn the ALJ's finding of no disability on these grounds:

1) the ALJ erred by finding Plaintiff capable of light work (Docket Entry 2 at 7); and

2) the ALJ failed to properly consider the opinion of treating orthopedist Dr. Surendrapal S. Mac (id.; see also Docket Entry 12 at 1 ("At my hearing my lawyer presented a note from my doctor stating that I was not able to work, and [i]t was not t[a]ken into consideration.")).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 13 at 3-12.)

**1. RFC**

Plaintiff's first assignment of error asserts that the ALJ erred by finding Plaintiff retained the RFC for a limited range of light work, because "[n]o one will give [her] a job [i]f [she] can't stand or sit for a long per[io]d of time," and her "medication for her neck and back make [her] [j]ust want to lay [sic] down." (Docket Entry 2 at 7; see also id. at 2 (asserting that "no one will hir[e] [her] [b]ecause of the [l]imitation of work [she] can do," and that her "medicine cause[s] [her] to be

---

⁵ (...continued)
review does not proceed to the next step.").

dro[ws]y and light[-]headed sometime[s]".) Plaintiff's contentions lack merit.

RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. §§ 404.1545(a), 416.945(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562-63; 20 C.F.R. §§ 404.1545(b), 416.945(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. §§ 404.1567, 416.967. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. §§ 404.1569a(c), 416.969a(c). An ALJ need not discuss every piece of evidence in making an RFC determination. See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (citing Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)). However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ here sufficiently explained the basis for the RFC determination. (See Tr. 21-25). The ALJ provided a comprehensive review of the medical evidence of record (see Tr. 21-24), making the following, pertinent findings:

9

- a consultative physical examination "in March 2012 showed no abnormal clinical findings that would preclude the physical demands of work activity on a sustained basis," including no significant paraspinal muscle discomfort, negative straight leg raise test, normal gait, and 5/5 strength in all extremities (Tr. 21-22; see also Tr. 505);

- records from Plaintiff's treating physician, Dr. Leonard Saltzman, "reflected that [Plaintiff] ambulated normally and had normal motor strength, tone and movement in all extremities" (Tr. 22; see also Tr. 300, 459, 468, 470, 473);

- "in September 2013, [a] CT scan of [Plaintiff's] cervical and thoracic spine was normal" (Tr. 22; see also Tr. 501, 785, 786);

- "[t]reatment notes from Stanley [sic] Orthopaedic and Hand Surgery Clinic showed . . . that [Plaintiff] had tenderness to palpation of her mid and paracervical spine with muscle spasms," but "had no weakness, atrophy, numbness, tingling, or swelling," and "straight leg raise tests were normal" with "normal range of motion despite complaints of pain" (Tr. 22-23; see also Tr. 481, 485, 489); and

- Plaintiff "reported to the emergency room twice in January 2016 secondary to left knee and back pain," but "radiological findings were unremarkable" and Plaintiff "had no neurological, sensory or motor deficits" and, by March 2016, Plaintiff's "knee had minimal swelling and good flexion and extension" (Tr. 23-24; see also Tr. 856-60, 865).

The ALJ additionally evaluated Plaintiff's subjective complaints, expressly discussing her testimony regarding her allegedly limited abilities to sit and stand and drowsiness caused by her pain medication (see Tr. 21; see also Tr. 884-85). However, the ALJ ultimately found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms

10

[we]re not entirely consistent with the medical evidence and other evidence in the record" (Tr. 21), and supported that finding with reasoned analysis:

> The [ALJ] has considered [Plaintiff's] complaints of pain. The evidence of record does not support the severity, frequency or functionally limiting effects of pain [Plaintiff] alleges. . . . [D]espite [Plaintiff's] pain, the clinical signs do not reflect strength, sensory or motor deficits. The straight leg raise was positive on one occasion, otherwise the findings were consistently negative. The radiology views were normal. [Plaintiff] testified that her pain medication relieved her pain "for a while." Although she testified to significantly limited activities of daily living, it is difficult to attribute that degree of limitation to [Plaintiff's] medical condition, as opposed to other reasons, in view of the benign or mild clinical signs and radiological findings. Moreover, [Plaintiff's] pain considered singularly or combined with any anxiety symptoms she may experience would not preclude the mental demands of work activity on a sustained basis in a work environment consistent with the [RFC]. [Plaintiff] did not testify that she had difficulty concentrating or focusing on the television programs she watched or when she read the bible. [Plaintiff] helped her children with their homework.

(Tr. 24.) Plaintiff does not raise any specific challenges to that analysis, but simply stresses that she remains in pain "all the time." (Docket Entry 2 at 3.) However, the ALJ labored under no obligation to accept Plaintiff's subjective complaints "at face value." Ramos-Rodriguez v. Commissioner of Soc. Sec., Civ. No. 11-1323 (SEC), 2012 WL 2120027, at *3 (D.P.R. June 11, 2012) (unpublished); see also Craig, 76 F.3d at 591 ("[The claimant] believes that the law forbids the ALJ finding her testimony not credible. Instead, presumably, the ALJ was obliged to accept,

11

without more, her subjective assertions of disabling pain and her subjective assessment of the degree of that pain. Of course, that is not and has never been the law in this circuit.").

Under such circumstances, Plaintiff has not demonstrated that the ALJ committed prejudicial error with respect to the RFC determination.

## 2. Dr. Mac's Opinion

In Plaintiff's second and final issue on review, she faults the ALJ for failing to properly consider Dr. Mac's opinion excusing Plaintiff from work effective December 18, 2014, due to complications from back and neck sprain and limiting her to 10 to 15 pounds of lifting. (Docket Entry 2 at 7 (referencing Tr. 853); see also Docket Entry 12 at 1 ("At my hearing my lawyer presented a note from my doctor stating that I was not able to work, and [i]t was not t[a]ken into consideration.").) That allegation falls short.

The treating source rule generally requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("[T]reating sources . . . provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as

12

consultative examinations or brief hospitalizations."). The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference. The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. See 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii). Moreover, as subsections (2) through (4) of the rule detail, a treating source's opinion, like all medical opinions, deserves deference <u>only</u> if well-supported by medical signs and laboratory findings <u>and</u> consistent with the other substantial evidence of record. See 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence <u>or</u> if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590 (emphasis added).

Here, the ALJ's evaluation of Dr. Mac's opinions comports with the above-cited regulations and Craig. The ALJ discussed Dr. Mac's opinion, and then weighed it as follows:

> The [ALJ] gives little weight to Dr. Mac's opinion because the correspondence is undated and if the [ALJ] assumes that the date of the correspondence is the same date that Dr. Mac indicated that [Plaintiff] should be excused from work then the last time Dr. Mac treated [Plaintiff] was 7 months prior to his opinion in May 2014. Therefore Dr. Mac would have no current objective support for his opinion.

(Tr. 25.) Thus, the ALJ permissibly discounted Dr. Mac's opinion because it lacked support by any recent clinical evidence. See Craig, 76 F.3d at 590 ("[I]f a physician's opinion is not supported

13

by clinical evidence . . ., it should be accorded significantly less weight."). Moreover, Plaintiff has not specifically challenged the ALJ's rationale for according little weight to Dr. Mac's opinion (see Docket Entries 2, 12), and the record supports the ALJ's determination that at least seven months elapsed between Dr. Mac's last treatment of Plaintiff and the probable date on which he issued his disability opinion (December 18, 2014) (see Tr. 481-82, 853).

In sum, Plaintiff's second issue on review fails as a matter of law.

### III. CONCLUSION

Plaintiff has not established an error warranting relief.[6]

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's motion for

---

[6] Plaintiff attached to her instant motion some medical records from Old Vineyeard Behavioral Health Services dated August 27, 2018, to September 4, 2018. (Docket Entry 12 at 3-8.) "[A federal district court] may at any time order additional evidence to be taken before the Commissioner [ ], but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (emphasis added). "Evidence . . . is material if there is 'a reasonable probability that the new evidence would have changed the outcome.'" Meyer v. Astrue, 662 F.3d 700, 705 (4th cir, 2011) (quoting Wilkins v. Secretary of Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991)). As the Commissioner argues (see Docket Entry 14 at 12), Plaintiff's new evidence lacks materiality, because the records reflect Plaintiff's treatment for depression in August and September 2018 and, thus, do not relate to the period adjudicated by the ALJ (see Tr. 27 (containing ALJ's determination that Plaintiff did not qualify as disabled from December 31, 2010, to May 12, 2016, the date of the ALJ's decision)). Thus, Plaintiff's new evidence does not warrant remand under sentence six of 42 U.S.C. § 405(g).

judgment (Docket Entry 12) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be granted, and that this action be dismissed with prejudice.

							/s/ L. Patrick Auld
							**L. Patrick Auld**
						**United States Magistrate Judge**

April 5, 2019